UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MINNIE LIVINGSTON,

                     Plaintiff,          **REPORT AND**
     -against-                    **RECOMMENDATION**

ROOSEVELT UNION FREE SCHOOL     17-CV-4189 (JMA)(SIL)
DISTRICT,

                     Defendant.
------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

By way of Complaint dated July 13, 2017, Plaintiff Minnie Livingston ("Plaintiff" or "Livingston") commenced this employment retaliation action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. §§ 296, 297, against Defendant Roosevelt Union Free School District ("Defendant" or the "School District"). *See* Complaint ("Compl."), Docket Entry ("DE") [1]. Presently before the Court, on referral from the Honorable Joan M. Azrack for Report and Recommendation, is Defendant's motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* DE [20]. For the reasons set forth herein, the Court respectfully recommends granting in part and denying in part the School District's motion.

I.    **Background**

A.    <u>**Relevant Facts**</u>

The following facts are taken from the Complaint and presumed true for purposes of Defendant's motion.

Livingston has been employed by the School District since 1990 as a guidance counselor, advising ninth-grade students at Roosevelt High School (the "High School"). *See* Compl. ¶ 17.  In 2005, Plaintiff sued the School District and then-Assistant Principal, Brodrick Spencer ("Spencer"), claiming that he had sexually harassed her (the "Prior Litigation"). *See id*. ¶ 19.  The Prior Litigation settled in 2009, and included a monetary payment to Livingston. *See id*.  Plaintiff claims that, almost immediately after the settlement, she was targeted as a litigious troublemaker and that various School District officials began retaliating against her. *See id*. ¶¶ 20, 23.[1]  Michael Jones ("Jones"), a former Principal within the School District, told Livingston that Defendant was "after [her]," and that although administrators are supposed to "stick together," he could not "get on that bandwagon." *See id*. ¶ 23.  In addition, Dr. Straughan, then-Principal of the High School, told Plaintiff that he was warned to "look out for [her]" because she does "nothing but sue." *See id*.

---

[1] The School District Officials who allegedly knew about the Prior Litigation and engaged in retaliatory conduct include:  Joan Lange ("Lange"), Assistant Superintendent for Secondary Education; Treva Patton ("Patton"), Acting Principal of the High School; Carleen Henry ("Henry"), Assistant Principal of the High School; Cassandra Jackson-Middleton ("Jackson-Middleton"), Assistant Principal of the High School; Gerilyn Smith ("Smith"), Director of Guidance of the High School; Marnie Hazelton ("Hazelton"), Superintendent of schools in the School District; Shawn Farnum ("Farnum"), the former Principal of the High School; Reina Jovin ("Jovin"), the former Director of Guidance of the High School; and Spencer. *See* Compl. ¶¶ 24, 25.

Beginning during the 2015-16 school year – around when Spencer was being "forced out of his employment" from a school district in upstate New York and considered (and later rehired) as Principal of the High School – the retaliatory conduct purportedly escalated. *See id*. ¶¶ 21, 25, 28. As recently as 2016, Patton appeared "concerned" about the settlement of the Prior Litigation, and she along with Henry and Jackson-Middleton all inquired about the lawsuit. *See id*. ¶ 25. Moreover, former School District Superintendents "Ross and Harris" accused Plaintiff of lying in connection with the Prior Litigation, which they claim, "should never have [been] filed," and current Superintendent, Hazelton, told Livingston's coworkers that she is "litigious" in light of her "multiple lawsuits against the district." *See id*. ¶ 26.

During the 2015-16 school year, while the murmurs regarding the Prior Litigation had intensified, Livingston claims she was subjected to numerous retaliatory, hostile, and adverse actions at the behest of School District administrators. *See id*. ¶ 30. Specifically, Patton, Hazelton, and Henry publicly reprimanded Plaintiff, and she was "disparaged and ridiculed" in front of parents and peers. *See id*. ¶ 31-32, 39. Livingston was also "required" to take on an "excessive caseload" by being assigned eleventh and twelfth grade students in addition to her ninth graders. *See id*. ¶ 33. Further, Smith refused to submit Plaintiff's name to work extended summer hours, instead breaking tradition and recommending a substitute counselor for that extra time. *See id*. ¶ 35. Finally, on several occasions Patton told Plaintiff to "get another job" and inquired whether she ever considered "leaving." *See id*. ¶¶ 38, 39.

3

After Plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") in June 2016, *see* Section II(B), *infra*, she claims the retaliation and hostility compounded further when the School District rehired Spencer as Principal of the High School, notwithstanding its knowledge that Livingston could not work in the same building as him. *See id*. ¶¶ 40, 41. Despite the outrage caused by Spencer's hiring, Hazelton defended Spencer's right to a "second chance." *See id*. ¶ 29.

When Plaintiff ultimately encountered Spencer on August 30, 2016, she had a "medical episode" and was transported by ambulance to Nassau University Medical Center. *See id*. ¶ 42. As a result of this incident, Plaintiff has been unable to return to work – initially calling in sick for multiple days, and now on indefinite leave. *See id*. ¶¶ 43-44. On September 21, 2016, Livingston learned that Defendant posted an opening for her position "with the objective of replacing her," despite not knowing when she might be medically cleared to return to work. *See id*. ¶ 45. The next day, Diane Hairston ("Hairston") was hired as "leave replacement" counselor. *See id*. ¶ 46.

## B.    Exhaustion of Administrative Remedies

According to the Complaint, Livingston filed a charge with the EEOC against the School District on June 21, 2016, alleging that it retaliated against her for participating in protected activity, namely asserting claims in the Prior Litigation. *See* Compl. ¶¶ 8, 9. On September 29, 2016, Plaintiff supplemented her charge with claims of subsequent retaliation. *See id*. ¶ 10. On April 19, 2017, the EEOC issued

Livingston a Dismissal and Notice of Rights, paving the way for the commencement of this action. *See id*. ¶¶ 9-10.

Similarly, on June 14, 2016, Plaintiff served Defendant with a Notice of Claim for her NYSHRL cause of action concerning the same unlawful retaliation. *See id*. ¶ 11. On September 29, 2016, Livingston served the School District with a Supplemental Notice of Claim for the retaliation she contends occurred in response to her initiation of administrative proceedings. *See id*. ¶ 12.

### C. Procedural History

Based on the above, Plaintiff commenced this action on July 14, 2017. *See* DE [1]. The Complaint asserts two causes of action, each alleging that Defendant's conduct constitutes unlawful retaliation pursuant to: (i) Title VII; and (ii) the NYSHRL. *See* Compl. ¶¶ 48-59.

On September 9, 2017, Defendant wrote the Court stating its intention to move to dismiss the Complaint. *See* DE [8]. The motion was fully briefed and filed on March 20, 2019, and subsequently referred to this Court for Report and Recommendation. *See* DEs [20] – [25]; November 4, 2019 Order Referring Motion. In arguing for dismissal, the School District claims that the Complaint is untimely and fails to allege any cognizable adverse employment actions that are causally linked to the Prior Litigation. *See generally* Memorandum of Law in Support of Motion to Dismiss ("Def.'s Mem."), DE [21]; Reply Memorandum of Law in Further Support of Motion to Dismiss ("Def.'s Reply"), DE [25]. In response, Livingston contends that all of her claims are timely, and that she has adequately pled adverse employment

actions and the necessary causation. *See generally* Memorandum of Law in Opposition to Motion to Dismiss ("Pltf.'s Mem."), DE [23].

## II.    Legal Standard for a Motion to Dismiss

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). A complaint "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966). In the employment discrimination context, "a … complaint need not allege facts establishing each element of a *prima facie* case of discrimination to survive a motion to dismiss … [but] it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 254 (2d Cir. 2014) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510, 122 S. Ct. 992 (2002); *Iqbal*, 556 U.S. at 680, 129 S. Ct. 1949; *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974 (internal quotations, brackets and ellipses omitted).

In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the Complaint as true and draw all reasonable inferences in Plaintiff's favor. *See LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). To that end, the Court may consider:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated . . . by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.,* documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted); *see also Miotto v. Yonkers Pub. Sch.*, 534 F. Supp. 2d 422, 425 (S.D.N.Y. 2008) ("[I]n assessing the legal sufficiency of a claim, the court may consider only the facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference").[2]

## III.   Discussion

Applying the standards outlined above, and for the reasons set forth below, the Court respectfully recommends that Defendant's motion to dismiss be granted in part and denied in part. Specifically, the Court recommends that the motion be denied in

---

[2] Defendant urges the Court to consider excerpts from a transcript of Plaintiff's 50-h examination that occurred prior to this action's commencement because "portions of that testimony directly contradict[] some of the allegations in [the Complaint]." *See* Def.'s Mem. at notes 4, 5. Plaintiff similarly points to a separate portion of that transcript in an effort to bolster her claims. *See* Pltf.'s Mem. at 18-19. Neither party attaches the complete document. The Court declines to consider this testimony or make credibility determinations at this stage of the litigation. *See McDonald v. Hempstead Union Free Sch. Dist.*, 18-cv-5658, 2019 WL 2716179, at *4 (E.D.N.Y. June 28, 2019) ("the weight of authority in the Second Circuit excludes 50-h hearing testimony from consideration on a motion to dismiss") (collecting cases) (internal quotation omitted).

all respects except as to Plaintiff's allegations concerning retaliation in the form of the School District's hiring of a "leave replacement" counselor in her stead.

### A. Statute of Limitations

As an initial matter, the Court concludes that Plaintiff's claims are timely.

#### i. Title VII

In New York, a plaintiff asserting claims under Title VII must file a charge with the EEOC within 300 days from the date of any act of discrimination or retaliation. *See Borrero v. Am. Exp. Bank Ltd.*, 533 F. Supp. 2d 429, 435 (S.D.N.Y. 2008) ("Under Title VII, the statute of limitations for filing a charge of discrimination in states such as New York that have an agency with the authority to address charges of discriminatory employment practices is 300 days"). Generally, "only incidents that took place within the timely filing period are actionable." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 2073 (2002); *see also Liss v. Nassau Cty.*, 425 F. Supp. 2d 335, 340 (E.D.N.Y. 2006) ("each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice, and … starts a new clock for filing charges...") (internal quotation and citation omitted).

Notwithstanding the rule, an individual "can recover for … conduct [outside the 300-day period] if it is demonstrated that there was a continuous policy and practice of discrimination, and that one act in furtherance of the policy and practice fell within the 300-day period." *Id.* (citing *Bonner v. Guccione*, 178 F.3d 581, 584 (2d Cir. 1999)); *see also Branch v. Guilderland Cent. Sch. Dist.*, 239 F. Supp. 2d 242, 253 (N.D.N.Y. 2003) ("the continuing violations doctrine … allows a plaintiff 'to bring suit

challenging all conduct that was part of a continuing violation, even conduct that occurred outside the limitations period.'") (quoting *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994) (internal brackets omitted)).  This doctrine, however, does not apply to "discrete acts of discrimination, even if they are related to acts alleged in timely filed charges." *Pietri v. N.Y.S. Office of Court Admin.*, 936 F. Supp. 2d 120, 134 (E.D.N.Y. 2013).  In the hostile work environment context, "[t]he Second Circuit has recognized the application of the continuing violation doctrine in cases where plaintiffs could provide proof of specific or ongoing policies or practices of discrimination that caused their environment-based injuries." *Plant v. Deutsche Bank Sec., Inc.*, No. 07-cv-3498, 2007 WL 2187109, at *3 (S.D.N.Y. July 23, 2007); *see also Germany v. N.Y.S. D.O.C.S.*, No. 03-cv-148, 2003 WL 22203724, at *5 (S.D.N.Y. Sept. 22, 2003) ("a hostile work environment continues over time, and is created and evidenced by a series of separate acts that collectively constitute one unlawful employment practice…. Because [such claims] … necessarily … involve[] acts and conduct repeated over a period of time, the statute of limitations for filing a hostile work environment charger with the EEOC is more flexible…").

Here, Plaintiff contends that she filed her first EEOC charge on June 21, 2016, *see* Compl. ¶ 8, rendering any actionable conduct that occurred on or after August 26, 2015 (300 days before the EEOC filing) timely under Title VII.  Thus, because the adverse retaliatory acts asserted in this lawsuit occurred during the 2015-16 school year (*i.e.*, *after* August 26, 2015), *see, e.g.*, *id.* ¶¶ 28, 31, 33-35, 44, those claims are timely, even when considered a series of discrete acts each with its own limitations

period.[3]  Moreover, as discussed below, the Complaint plausibly alleges a continuous course of conduct leading to the creation of a retaliatory hostile work environment such that reliance on the continuing violation doctrine is appropriate at this juncture. Specifically, Livingston quotes a School District administrator explicitly telling her that Defendant was "after [her]," *see* Compl. ¶ 23, indicating that there was a concerted strategy to unlawfully retaliate against Plaintiff.  *See, e.g.*, *id.* ¶¶ 20, 21, 42-44 (alleging that a pervasive pattern of conduct began immediately after the Prior Litigation settled, escalated in the 2015-16 school year, and culminated with Plaintiff being forced to take indefinite medical leave beginning in August 2016).  Accordingly, the Court respectfully recommends denying Defendant's motion to dismiss Livingston's Title VII claims as time-barred.

ii.     NYSHRL

The Court similarly concludes that Plaintiff's state law claims are timely. "Under the NYSHRL … the statute of limitations is [ordinarily] three years from the date that the claim accrued" and "tolls … during the period in which a complaint is filed with the EEOC and the issuance by the EEOC of a right-to-sue letter." *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 831 (S.D.N.Y. 2013) (internal citations omitted); *see also Morse v. JetBlue Airways Corp.*, 941 F. Supp. 2d 274, 291 (E.D.N.Y.

---

[3] The Court rejects the School District's assertion that the Complaint is untimely because "several of the allegations … regard incidents that took place prior to August 26, 2015." *See* Def.'s Mem. at 4-5. Although the *Prior Litigation* was commenced and settled well outside the applicable 300-day period, the alleged *retaliatory conduct* all occurred during the requisite time window. *See James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 310 (E.D.N.Y. 2012) ("With respect to plaintiff's retaliation claims under Title VII, it is clear that for statute of limitations purposes, the clock begins to run at the time the adverse employment action occurred – not when the plaintiff engaged in the underlying protected activity.") (internal citation omitted).

2013) ("Courts in this Circuit have tolled the statute of limitations applicable to NYSHRL … claims during the pendency of any complaint that is filed with the New York Division of Human Rights … or the EEOC.") (collecting cases).

With respect to NYSHRL claims against a school district, however, the statute of limitations is one year. *Smith v. Tuckahoe Union Free Sch. Dist.*, No. 03-cv-951, 2009 WL 3170302, at n. 9 (S.D.N.Y. Sept. 30, 2009) (citing N.Y. Educ. L. § 3813(2-b)); *see also Amorosi v. S. Colonie Indep. Cent. Sch. Dist.*, 9 N.Y.3d 367, 373, 849 N.Y.S.2d 485, 489 (2007) (holding that NYSHRL claims against school districts are subject to a one-year statute of limitations). Courts in the Second Circuit disagree as to whether the filing of an EEOC charge tolls the limitations period for NYSHRL actions against school districts, as it does for other entities.

Defendant urges this Court to follow *Ayazi v. New York City Dep't of Educ.*, wherein the court, relying in part on *Amorosi*, concluded that "a plaintiff's filing of an EEOC complaint does not toll the running of the statute of limitations" for NYSHRL claims against a school district. *See* Def.'s Mem. at 4; *Ayazi,* No. 08-cv-2456, 2012 WL 4503257, at *8 (E.D.N.Y. Sept. 28, 2012), *aff'd on other grounds*, 586 Fed. Appx. 600 (2d Cir. 2014) (citing *Smith*, 2009 WL 3170302, at n. 9 (the weight of authority dictates that the filing of an EEOC charge does not toll the statute of limitations for state law *torts*); *Duran v. Jamaica Hosp.*, 216 F. Supp. 2d 63, 67 (E.D.N.Y. 2002) (the filing of EEOC complaint does not toll statute of limitations for supplemental state *tort* claim)).

In contrast, the court in *Riccardo v. New York City Dep't of Educ.*, held that other courts' reliance on *Amorosi*, when ruling that claims against school districts cannot be tolled, is misplaced because tolling was not at issue in that decision – it merely confirmed that NYSHRL claims against school districts are subject to a one-year, rather than a three-year, statute of limitations.  No. 16-cv-4891, 2016 WL 7106048, at *6 (S.D.N.Y. Dec. 2, 2016), *report and recommendation adopted sub nom.*, 2017 WL 57854 (S.D.N.Y. Jan. 4, 2017).  The court went on to discuss that although the New York legislature intended to limit actions against school districts through a shortened statute of limitations, its silence with respect to tolling implies that they did not intend to prohibit this doctrine's applicability.  *See id*.  Thus, the court concluded that the one-year statute of limitations for NYSHRL employment discrimination claims against school districts indeed tolls during the pendency of an EEOC proceeding, just as it does for other entities.  *See id*.

Upon careful review of *Amorosi* and its federal court progeny, the Court is persuaded by the reasoning in *Riccardo*, and concludes that the one-year statute of limitations for NYSHRL claims against school districts tolls while an EEOC charge is pending.  Particularly instructive is *Duran*, wherein the court discussed that the "rationale for refusing to toll the statute of limitations of a pendent state common law claim, such as [a] defamation claim, is that a timely state law complaint could have been filed at the same time as the Title VII claim without the prerequisite that it go before an administrative body."  216 F. Supp. 2d at 68 (citing *Gardner v. St. Bonaventure Univ.*, 171 F. Supp. 2d 118, 131 (W.D.N.Y. 2001); *Stordeur v. Computer*

*Associates Int'l, Inc.*, 995 F. Supp. 94, 101 (E.D.N.Y. 1998)).  Similarly, in *Smith* – which the *Ayazi* court primarily relies on in holding that an EEOC charge *does not* toll the statute of limitations for NYSHRL employment claims against school districts – the "overwhelming weight of authority" addressed pendent state law *torts*.  *See Ayazi*, 2012 WL 4503257, at *8 (citing *Smith*, 2009 WL 3170302, at n. 9).  Here, however, the claims asserted by Livingston under the NYSHRL involve identical facts as those brought pursuant to Title VII, and thus could not be litigated prior to administrative exhaustion.  Moreover, the retaliatory acts alleged all occurred within one year of Plaintiff's filing of her EEOC charge (*i.e.*, after June 21, 2015) and would be covered by the continuing violation doctrine in any event for the reasons set forth above.  Accordingly, the Court respectfully recommends denying Defendant's motion to dismiss Livingston's NYSHRL claims as untimely.

## B.   The Merits of Plaintiff's Claims

Having determined that Livingston's suit is not time-barred, the Court next considers the substance of her allegations and concludes that the Complaint asserts plausible claims for relief under Title VII and the NYSHRL.

### i.   Title VII Retaliation

Title VII makes it unlawful "for an employer to discriminate against any of [its] employees … because [she] has opposed any practice made an unlawful employment practice by [Title VII], or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the statute]."  42 U.S.C.A. § 2000e-3.

Retaliation claims under Title VII are analyzed applying the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *See, e.g., Eustache v. Home Depot U.S.A., Inc.*, 13-cv-421, 2014 WL 4374588, at *31 (E.D.N.Y. Sept. 2, 2014), *aff'd,* 621 Fed. Appx. 86 (2d Cir. 2015) (citing *Quarless v. Brooklyn Botanic Garden Corp.*, No. 11-cv-05684, 2014 WL 2767085, at *5 (E.D.N.Y. June 18, 2014) ("Retaliation claims under Title VII … are evaluated using the *McDonnell Douglas* three-step burden-shifting framework."), *aff'd,* 611 F. App'x 28 (2d Cir. 2015); *Brown v. Northrop Grumman Corp.*, No. 12-cv-1488, 2014 WL 4175795, at *5 (E.D.N.Y. Aug. 19, 2014) (noting that claims for retaliation under Title VII and the NYSHRL are analyzed using the *McDonnell Douglas* framework) (collecting cases). Under this analysis, a plaintiff must "first establish a *prima facie* case, after which the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Brown*, 2014 WL 4175795, at *5 (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)). "Once the defendant provides such a reason, the burden shifts back to the plaintiff to present competent evidence that the reasons offered by the defendants were not the true reasons, but were a pretext for … retaliation." *Id.* (citing *Fleming v. MaxMara USA, Inc.,* 371 Fed. Appx. 115, 117 (2d Cir. 2010); *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 499 (2d Cir. 2009)). "At the motion to dismiss stage … the allegations in the complaint need only give plausible support to the reduced *prima facie* requirements that arise under *McDonnell*

*Douglas* in the initial phase of a Title VII litigation." *O'Toole v. County of Orange*, 255 F. Supp. 3d 433, 440 (S.D.N.Y. 2017) (internal quotation and citation omitted).

To establish a *prima facie* claim for retaliation, an employee must show that: "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action*; and* (4) there was a causal connection between the protected activity and that adverse action." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (internal quotation, citation, and brackets omitted); *see also Harper v. Brooklyn Children's Ctr.*, No. 12-cv-4545, 2014 WL 1154056, at *3 (E.D.N.Y. Mar. 20, 2014).  Notably, "[t]he Second Circuit has emphasized that, in the context of [Title VII retaliation] cases, courts should evaluate the facts holistically rather than 'view individual incidents in isolation' or in a 'piecemeal fashion.'" *O'Toole*, 255 F. Supp. 3d at 441 (quoting *Redd v. N.Y. Div. of Parole,* 678 F.3d 166, 176 (2d Cir. 2012)).  Indeed, "[t]he standard for an adverse employment action in retaliation claims is considerably broader than the standard for discrimination claims under Title VII." *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 234 (E.D.N.Y. 2016) (internal quotation and citation omitted).

Here, the parties do not dispute whether the Prior Litigation constitutes protected activity that the School District (a defendant therein) knew about.  Instead, Livingston's retaliation claim hinges on whether she suffered materially adverse employment actions that were causally connected to the Prior Litigation.  As

discussed below, the Court respectfully recommends that Plaintiff has plausibly pled both elements.

### a.    Adverse Employment Action

A challenged action is materially adverse when it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Harper*, 2014 WL 1154056, at *3 (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006)); *see also Hicks v. Baines*, 593 F.3d 159, 169 (2d Cir. 2010) ("no longer must the alleged retaliatory act bear on the terms or conditions of employment; the proper inquiry now is whether the employer's actions were harmful to the point that they could well dissuade a reasonable worker from [engaging in protected activity]") (internal quotation, citation, and brackets omitted). Nevertheless, "[a]ctions that are 'trivial harms' – *i.e.*, 'those petty slights or minor annoyances that often take place at work and that all employees experience' – are not materially adverse." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (quoting *White*, 548 U.S. at 68, 126 S. Ct. at 2415).   Thus, "[m]aterial adversity is to be determined objectively, based on the reaction of a reasonable employee." *Id*.  In this regard, "[c]ontext matters." *Id*. (internal quotation omitted).  "Alleged acts of retaliation must be evaluated both separately and in the aggregate, as even trivial acts may take on greater significance when they are viewed as part of a larger course of conduct." *Id*. (citing *Hicks*, 593 F.3d at 165); *see also Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 229 (E.D.N.Y. 2014) (minor

16

acts that might not constitute material adversity in the abstract can be considered as such when considered in conjunction with other contemporaneous conduct).

Materially adverse action may also take the form of a hostile work environment. *Marquez v. City of New York*, No. 14-cv-8185, 2016 WL 4767577, at *13 (S.D.N.Y. Sept. 12, 2016) ("a retaliatory hostile work environment may … constitute materially adverse employment action.") (citing *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999)). "To establish that a retaliatory hostile work environment … might dissuade a reasonable worker from reporting activity prohibited by Title VII, a plaintiff must satisfy the same standard that governs hostile workplace claims by showing that the incidents of harassment following complaints were sufficiently continuous and concerted to have altered the conditions of [her] employment." *Villar v. City of New York*, 135 F. Supp. 3d 105, 137 (S.D.N.Y. 2015) (quoting *Rasco v. BT Radianz*, No. 05-cv-7147, 2009 WL 690986, at *15 (S.D.N.Y. Mar. 17, 2009); *see also Sclafani v. PC Richard & Son*, 668 F. Supp. 2d 423, 438 (E.D.N.Y. 2009) ("to establish a retaliatory hostile work environment, a plaintiff must satisfy the same standard that is applied generally to hostile work environment claims regarding the severity of the alleged conduct.") (collecting cases).

To that end, a plaintiff establishes this theory of adverse action by demonstrating that her workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015) (quoting *Harris v. Forklift Sys.,*

*Inc.,* 510 U.S. 17, 21, 114 S. Ct. 367 (1993)).  This standard may be met by showing "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotations and citations omitted).  Accordingly, courts should consider the "totality of the circumstances" when analyzing whether alleged hostility constitutes materially adverse action, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance.'" *Rivera*, 743 F.3d at 20 (quoting *Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 745 (2d Cir. 2003)).

Here, the Complaint contains multiple plausible allegations of materially adverse actions that, taken together, might dissuade a reasonable worker from suing her employer for sexual harassment or engaging in other protected activity in the future.  In this regard, some of the conduct at issue that may not constitute material adversity on its own amounts to a plausible pattern of retaliatory conduct when viewed in the aggregate.  *See Tepperwien*, 663 F.3d at 568.

Initially, Smith's purported refusal in May 2016 to submit Plaintiff's name to work extended summer hours traditionally reserved for permanent guidance counselors, instead recommending they be given to a substitute, may represent material adversity on its own.  *See* Compl. ¶ 35; *Bowen-Hooks*, 13 F. Supp. 3d at 217 ("A deprivation of the opportunity to earn overtime can be considered a materially

adverse employment action.") (collecting cases).  In addition, Plaintiff's allegation that multiple School District Superintendents accused her of lying about the claims asserted in the Prior Litigation may also constitute material adversity.  *See* Compl. ¶ 26; *O'Toole*, 255 F. Supp. 3d at 442 ("calling the plaintiff a 'liar' ha[s] been found to be materially adverse actions in connection with retaliation claims") (citing *Delisi v. Nat'l Ass'n of Prof'l Women, Inc.*, 48 F. Supp. 3d 492, 496 (E.D.N.Y. 2014)).

With respect to Plaintiff's contention that she was publicly reprimanded, disparaged, and ridiculed in front of parents and coworkers, and subject to verbal abuse after the Prior Litigation settled, *see* Compl. ¶¶ 31, 32, 39, courts reach different conclusions as to the viability of such claims depending on the circumstances at issue.  *Compare Montero v. City of Yonkers, New York*, 890 F.3d 386, 401 (2d Cir. 2018) ("An adverse employment action may include … reprimanding an employee.") (internal citations omitted)*; Thomas v. iStar Fin., Inc.*, 438 F. Supp. 2d 348, 366 (S.D.N.Y. 2006), *aff'd,* 629 F.3d 276 (2d Cir. 2010) ("A reprimand may be considered adverse employment action, and likewise could constitute a materially adverse action, depending on the context and the severity of the reprimand.") (citing *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999)); *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006) (Ridicule, when "considered a part of a larger campaign of harassment which though trivial in detail may have been substantial in gross" is recognized as actionable by Second Circuit jurisprudence.) (internal quotations and citations omitted); *with Rivers v. New York City Hous. Auth.*, 176 F. Supp. 3d 229, 252 (E.D.N.Y. 2016), *aff'd sub nom.*, 697 Fed. Appx. 726 (2d Cir. 2017) ("Courts in

this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions.") (citing *Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247, 266 (E.D.N.Y. 2012); *Johnson v. Conn. Dep't of Corr.*, 392 F. Supp. 2d 326, 340 (D. Conn. 2005) ("The 'routine ridicule' that [plaintiff] allegedly suffered also does not, without more, rise to the level of an adverse employment action for retaliation claims."); *cf. Brennan v. City of White Plains*, 67 F. Supp. 2d 362, 374 (S.D.N.Y. 1999) ("While verbal abuse might at times be sufficiently severe and chronic to constitute an adverse employment action, such behavior, without more, hardly rises to the level of actionable retaliation")).

Here, although the Complaint is sparse as to the specifics of the reprimands, Plaintiff identifies the names of three administrators who engaged in this conduct during the 2015-16 school year. *See* Compl. ¶ 31. When combined with the other allegations during that period – such as being assigned an excessive caseload and consistently being undermined in performing her job responsibilities, as well as being denied summer work and called a liar, *see id.* ¶¶ 26, 33-35 – an objectively pervasive pattern emerges sufficient to establish a retaliatory hostile work environment and defeat the School District's motion. *See Montero*, 890 F.3d at 401 ("[Adverse employment] actions may … include a pattern of harassment, where, using an objective standard, a plaintiff shows that the total circumstance of her working environment changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace.") (internal quotations and citation omitted); *see also Dash v. Bd. of Educ. of City Sch. Dist. of New York*, 238 F.

Supp. 3d 375, 386 (E.D.N.Y. 2017) ("There is neither a threshold magic number of harassing incidents that gives rise, without more, to liability [for a hostile work environment] as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim.") (quoting *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000)).

The Court therefore rejects Defendant's argument that Livingston suffered no materially adverse action because she was only subject to "benign comments" that "consist of nothing more than inquiries about [the Prior Litigation]." *See* Def.'s Mem. at 6, 10; Def.'s Reply at 1.  Although the Complaint does reference some coworkers' questions about the lawsuit, which alone do not amount to adversity, even if uncomfortable, it is disingenuous to contend that being told to "get another job" on several occasions while repeatedly being called a lying, litigious troublemaker merely reflects innocuous questions. *See* Compl. ¶¶ 23, 26, 27, 39; *O'Toole*, 255 F. Supp. 3d at 442 ("Defendant's conduct, considered as a whole, meets the 'objective' standard as the 'employment consequences of a negative nature' resulting from making a complaint could chill other employees from speaking up.") (quoting *Cox v. Onondaga Cty. Sheriff's Dep't,* 760 F.3d 139, 147 (2d Cir. 2014)).

Finally, the August 2016 hiring of Spencer to be Principal of the High School, despite Defendant's purported knowledge that Plaintiff could not work in the same building as him, constitutes materially adverse action when assessed in conjunction with the remaining allegations, especially given the claim that he was hired despite others' outrage because Hazelton believes "everyone deserves a second chance." *See*

21

Compl. ¶¶ 29, 41; *cf. Serrano v. Runyon*, No. 95-cv-469, 1997 WL 718976, at *4 (D. Conn. Aug. 22, 1997) (holding that a reasonable jury could conclude that a plaintiff being involuntarily transferred to a position that would require her to have greater interactions with her alleged harasser constitutes unlawful retaliation). Indeed, Livingston's first encounter with Spencer after he returned allegedly caused her to suffer a medical episode that required her to be hospitalized and has left her on medical leave ever since. *See* Compl. ¶¶ 42-44. It is plausible that a reasonable worker might have been dissuaded from commencing the Prior Litigation if she knew that the alleged harasser would someday be rehired to work with her.

The Court, however, concludes that Defendant's hiring of a "leave replacement [counselor] ... despite the fact that plaintiff had not applied for any extended leave" does not amount to adverse employment action as a matter of law. *See* Compl. ¶ 46; *see also Weisbecker v. Sayville Union Free Sch. Dist.*, 890 F. Supp. 2d 215, 234 (E.D.N.Y. 2012) ("Threats of termination do not … constitute an adverse employment action.") (collecting cases). Here, Plaintiff's allegations do not even rise to the level of threatened termination, as there is no indication that her position is not waiting for her upon being medically cleared to return to work. Moreover, the Complaint does not claim that the School District attempted to replace Livingston *prior* to her medical episode, and, indeed, concedes that Hairston was only hired as a "leave replacement." *See* Compl. ¶ 46. The Court therefore rejects Plaintiff's argument that "[t]he hiring of the leave replacement was … sufficiently adverse" because it "certainly would have impacted … plaintiff's ability to return" to work considering Hairston was hired only

a month after Livingston first went on leave.  *See* Pltf.'s Mem. at 16.  Accordingly, the Court respectfully recommends that the motion to dismiss the Complaint be granted insofar as it alleges that the hiring of Hairston constitutes an adverse employment action.

b.    *Causal Connection*

In addition to establishing an adverse employment action, Plaintiff "must plausibly plead a connection between the act and [her] engagement in protected activity." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). "Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (internal citation omitted); *see also Littlejohn*, 795 F.3d at 319 ("A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence … or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.") (internal quotation and citation omitted).  "Negative reactions by an employer to a plaintiff's complaints of discrimination have been deemed indicative of retaliatory animus." *White v. Dep't of Corr. Services*, 814 F. Supp. 2d 374, 390 (S.D.N.Y. 2011) (citing *Mandell v. Cnty. of Suffolk,* 316 F.3d 368, 383 (2d Cir.2003)).  "To adequately plead causation, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Duplan*, 888 F.3d at 625 (internal quotations and citation omitted).  "'But for' causation does not, however, require proof that

23

retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id*.

Here, the Complaint alleges direct evidence of retaliatory animus in quoting Jones, a former School District administrator, breaking rank to inform Plaintiff after her Prior Litigation settled that Defendant was "after [her]." *See* Compl. ¶ 23. Moreover, the Complaint contains numerous references to negative reactions concerning the Prior Litigation. *See id*. ¶¶ 23, 25-27. Accordingly, Plaintiff has plausibly claimed a causal link between the Prior Litigation and the alleged adverse employment actions.

Ignoring Jones's remark, the School District argues that the Complaint lacks "any facts constituting …direct or indirect evidence of retaliation, other than the fact that the action took place subsequent to the lawsuit." *See* Def.'s Mem. at 10-11; Def.'s Reply at 5 ("other than the chronological order of events … [the] Complaint fails to identify a single reason why this theory [of retaliation] should be considered plausible"). To that end, Defendant contends that Plaintiff fails to plead facts to suggest some of the administrators alleged to have retaliated against her, such as Hazelton and Smith, were aware of the Prior Litigation. *See id*. at 11-12. Contrary to the School District's assertion, however, the Complaint names these individuals and claims that they "knew about [the earlier lawsuit]." *See* Compl. ¶¶ 24-25.[4]

---

[4] By way of example, the School District contends that "by the plain language of the Complaint," Patton could not have shown retaliatory animus toward Plaintiff because she only asked "benign questions regarding the terms of the settlement." *See* Def.'s Mem. at 10-11, note 6. On the contrary, however, the Complaint alleges not only that Patton was "concerned" about the settlement, but also that she publicly reprimanded Livingston, often told her to get another job and inquired as to whether Plaintiff considered leaving. *See* Compl. ¶¶ 31, 39.

Defendant further focuses on the temporal gap between the Prior Litigation – which was commenced in 2005 and settled in 2009 – and the alleged retaliation that occurred during the 2015-16 school year, arguing that causation cannot be inferred due to the time lapse. *See* Def.'s Mem. at 12-13. This contention is also without merit because the direct evidence of retaliatory animus alleged herein negates the need for temporal proximity. *See Duplan*, 888 F.3d at 25.

The Court similarly rejects Defendant's argument that the only causal link between rehiring of Spencer as Principal of the High School and the Prior Litigation is the chronological order of events. *See* Def.'s Mem. at 13; Def.'s Reply at 5. In addition to the general retaliatory animus discussed above, the Complaint claims that Hazelton, the current Superintendent of the School District, defended Spencer's hiring despite the outrage it caused, stating that "everyone deserves a second chance." *See* Compl. ¶ 29. Finally, the School District implies that it is implausible to conclude that it would have hired Spencer as Principal but-for a desire to retaliate against Livingston because the decision affects hundreds of students, families, and employees. *See* Def.'s Reply at 1. To that end, the Court notes that the School District will have the opportunity to articulate any non-discriminatory, non-pretextual reasons for this hiring at the appropriate juncture, but this unsubstantiated position is insufficient to grant its motion on the pleadings. *See O'Toole*, 255 F. Supp. 3d at 440 ("At the motion to dismiss stage … the allegations in the complaint need only give plausible support to the reduced *prima facie* requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation").

Accordingly, the Court concludes that Plaintiff has sufficiently alleged a causal connection between the Prior Litigation and the adverse employment actions she faced, and respectfully recommends denying Defendant's motion to dismiss the Title VII retaliation cause of action except with respect to the allegations concerning the hiring of Hairston as a leave replacement counselor.

ii.    NYSHRL

The Court similarly concludes that Plaintiff has plausibly pled a cause of action under Sections 296 and 297 of the NYSHRL.  Like Title VII, "the NYSHRL safeguards employees against retaliation for engaging in protected activities." *E.E.O.C.*, 967 F. Supp. 2d at 834 (citing N.Y. Exec. L. § 296(7)).  To that end, "claims asserted under Title VII and the NYSHRL are analyzed pursuant to the same standard; therefore, analysis of identical claims brought by an individual under both of these laws can be performed in tandem."[5]    *Id.* at 832 (citing *Pucino v. Verizon Wireless Communications, Inc.*, 618 F.3d 112, n. 2 (2d Cir. 2010)); *see also King v. New York State Div. of Veterans' Affairs*, No. 06-cv-6391, 2010 WL 11613547, at *12 (E.D.N.Y. Mar. 29, 2010) ("Claims brought pursuant to NYSHRL … § 296 'are analytically identical to claims brought pursuant to Title VII.") (quoting *McDowell v. T-Mobile USA, Inc.*, 307 Fed. Appx. 531, n. 1 (2d Cir. 2009) (collecting cases)).  Accordingly, the

---

[5] On August 12, 2019, several amendments to the NYSHRL were signed into law, which effectively rendered the standard for claims thereunder closer to that of the New York City Human Rights Law. *See Wellner v. Montefiore Med. Ctr.*, No. 17-cv-3479, 2019 WL 4081898, at n. 4 (S.D.N.Y. Aug. 29, 2019).  These changes, which, *inter alia*, eliminate Title VII's analogous "severe and pervasive" standard for establishing a hostile work environment, do not apply retroactively and so do not affect the Court's analysis in this action.  *See id.*; *see also Chauhan v. MM Hotel Mgmt. LLC*, No. 18-cv-5963, 2019 WL 6118006, at n. 7 (E.D.N.Y. Nov. 18, 2019).

Court respectfully recommends denying Defendant's motion insofar as it seeks to dismiss Plaintiff's NYSHRL cause of action for the same reasons that dismissal of the Title VII retaliation claim is unwarranted.[6]

## IV.  Conclusion

For the reasons set forth above, the Court respectfully recommends that Defendant's motion to dismiss be granted in part and denied in part as detailed herein.  Specifically, the Court recommends that the motion be denied in all respects except as to Plaintiff's allegations concerning retaliation in the form of School District's hiring of a "leave replacement" counselor in her stead.

## V.  Objections

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
        January 15, 2020          /s/ Steven I. Locke
                                  STEVEN I. LOCKE
                                  United States Magistrate Judge

---

[6] Notably, the School District's briefs are devoid of any arguments concerning the substance of Plaintiff's NYSHRL claims.  *See generally* Def.'s Mem.; Def.'s Reply.