UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

MINNIE LIVINGSTON,

                            Plaintiff,                           **REPORT AND**
                                                                 **RECOMMENDATION**

         -against-                                               17-CV-4189 (JMA)(JMW)

ROOSEVELT UNION FREE SCHOOL
DISTRICT,

                            Defendant.

---------------------------------------------------------------X

Thomas Ricotta
**Ricotta & Marks, P.C.**
24-11 41st Avenue
Ste Second Floor
Long Island City, NY 11101
*For Plaintiff*

Gerald Stephen Smith
**Silverman and Associates**
445 Hamilton Avenue
Suite 1102
White Plains, NY 10601
*For Defendant*

**WICKS,** Magistrate Judge:

## I.    PRELIMINARY STATEMENT

Plaintiff Minnie Livingston commenced this employment retaliation action on July 14, 2017,

against Defendant Roosevelt Union Free School District ("Defendant" or "District"), pursuant to Title VII

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., and the New York State Human

Rights Law ("NYSHRL"), N.Y. Exec L. §§ 296, 297.  (DE 1 at ¶1.)  Specifically, Plaintiff, a former

guidance counselor, alleges that she was subjected to unlawful retaliation because of a prior lawsuit that

settled, wherein she alleged that her supervisor -- Broderick Spencer -- had sexually harassed and

assaulted her.  (*See generally* DE 1).   Plaintiff claims that when she returned to work after the prior

lawsuit was resolved, she was subject to harassment which consisted of comments, general hostility,

treatment that differed from her coworkers regarding scheduling and assignments, discipline, and re-

hiring the individual (Spencer) who had allegedly harassed her in the prior lawsuit into a position where she would need to come into contact with him. (*Id.*) The re-hiring of Spencer allegedly caused Plaintiff to suffer an emotional breakdown. (*Id.*)

Defendant, on the other hand argues that Plaintiff has failed to produce evidence sufficient to establish that Defendants subjected her to adverse employment actions or a hostile work environment, and that Plaintiff has failed to produce evidence sufficient to establish a causal link between the prior lawsuit and alleged subsequent events. (DE 53.)

Before the Court on referral from the Honorable Joan M. Azrack is Defendant's motion for summary judgment on Plaintiff's Complaint in its entirety. (DE 52-55.) For the reasons that follow, the undersigned respectfully recommends to District Judge Azrack that Defendant's motion for summary judgment be GRANTED in its entirety, and the Complaint be dismissed.

## II.    BACKGROUND

### A. Relevant Procedural History

On March 20, 2019, Defendant filed a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. (DE 20.) On March 11, 2020, The Honorable Joan M. Azrack adopted the Honorable Steven I. Locke's report and recommendation (DE 29), which granted in part and denied in part Defendant's motion. (DE 38.) Defendant's motion was denied in all respects except as to Plaintiff's allegations concerning retaliation in the form of the District's hiring of a "leave replacement" counselor in her stead. (DE 29; DE 38.) Thus, Plaintiff's sole claim for retaliation pursuant to Title VII and the NYSHRL survived with the exception of the allegations regarding a "leave replacement." (*Id.*)

On February 23, 2021, Defendant filed a request for a pre-motion conference regarding its proposed motion for summary judgment. (DE 47.) Plaintiff opposed (DE 48) and on September 15, 2021, Judge Azrack granted Defendant's request, and referred the pre-motion conference and any resulting motion to the undersigned for a report and recommendation. (Electronic Order dated Sep. 15, 2021.) The undersigned held a pre-motion conference on September 28, 2021. (DE 49.) Defendant moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56, arguing that Plaintiff has

2

failed to produce evidence of retaliation.  (DE 52-55; DE 57.)  Plaintiff opposes, arguing that genuine

issues of fact exist upon which a reasonable juror may find that Defendant subjected Plaintiff to a hostile

work environment and/or otherwise subjected Plaintiff to retaliation in response to her prior complaints of

discrimination. (DE 59.)  Oral argument on the motion was held on March 31, 2022.  (DE 61.)

**B.  The Undisputed Material Facts**[1]

Plaintiff started working for Defendant Roosevelt Union Free School District in 1999 as a

guidance counselor for grades 9-12.  (DE 54 at ¶¶ 1, 15.)  On June 12, 2009, Plaintiff entered into an

agreement with the District to resolve a prior lawsuit she had initiated regarding sexual harassment claims

involving her supervisor and then Assistant Principal, Broderick Spencer.  (DE 1 at ¶19; DE 54 at ¶ 2.)

The agreement released the District from any claims "from the beginning of the world" through June 12,

2009. [2]  (DE 54 at ¶ 3.)

**i.    Plaintiff's Assignments from 2009-2017**

From 2009-2011 Plaintiff received positive evaluations.  (*Id.* at ¶¶ 4-5.)  Dr. Nisbett was

Plaintiff's supervisor for the 2011-2012, 2012-2013, and 2013-2014 school years, during which time Dr.

Nisbett did not retaliate against Plaintiff and apparently overrode alleged retaliatory efforts of others.  (DE

---

[1] Unless otherwise noted, a standalone citation to a party's Rule 56.1 statement means that the Court has deemed the underlying factual allegation undisputed. Any citation to a Rule 56.1 statement incorporates by reference the documents cited in it. Where relevant, however, the Court may cite directly to an underlying document.  The Court has deemed true undisputed facts averred in a party's Rule 56.1 statement to which the opposing party cites no admissible evidence in rebuttal.  *See Stewart v. Fashion Inst. of Tech.,* No. 18-cv-12297 (LJL), 2020 WL 6712267, at *8 (S.D.N.Y. Nov. 16, 2020) ("'[P]ursuant to Local Civil Rule 56.1 [the movant's] statements are deemed to be admitted where [the non-moving party] has failed to specifically controvert them with citations to the record.'") (quoting *Knight v. N.Y.C. Hous. Auth.*, No. 03 Civ. 2746(DAB), 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007)); *Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything."). "Additionally, to the extent [a party's] 56.1 statement 'improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts,' the Court has disregarded [such] statement[s.]" *McFarlane v. Harry's Nurses Registry*, No. 17-CV-06350 (PKC) (PK), 2020 WL 1643781, at *1 n.1 (E.D.N.Y. Apr. 2, 2020) (quoting *Risco v. McHugh*, 868 F. Supp. 2d 75, 85 n.2 (S.D.N.Y. 2012)).

[2] The parties do not dispute that Plaintiff's prior settlement precludes her from pursuing any claims that predate the execution of that settlement agreement on June 12, 2009.  (DE 59 at 9.)

60 at ¶¶ 18-19.)

During 2011-2015, Plaintiff was assigned students from grades 10-12. (DE 54 at ¶ 20.) Plaintiff was honored to work with 11th and 12th graders and did not have an issue counseling students from multiple grades. (*Id.* at ¶¶ 21-22; ¶ 25.) Other counselors were also assigned students from multiple grades. (*Id.* at ¶ 23.) During the 2015-2016 year, each guidance counselor was assigned a specific grade level, but Plaintiff was also assigned students from various grade levels. (*Id.* at ¶¶ 32-34.) Plaintiff never objected to the number of students she was assigned, but had an issue with being assigned students outside of her regularly assigned grade levels. (DE 60 at ¶¶ 16-17.) However, Assistant Principal Henry told Plaintiff she was assigned the students from other grades because of parents complaining about another counselor, which Plaintiff understood to be true. (DE 54 at ¶¶ 34-35.) Additionally, Shawn Farnum, Principal of Roosevelt High at that time, advised Plaintiff that several other parents requested that their students stay assigned to Plaintiff because they had built a relationship in the prior years. (*Id.* at ¶¶ 36-37.) For the 2016-2017 school year, the District gave Plaintiff first choice of assignments among all of the counselors. (*Id.* at ¶ 48.)

Plaintiff was never denied summer hours, including August 27, 2009, the summer after her prior lawsuit was settled. (*Id.* at ¶¶ 46, 49-50.) Plaintiff was also approved for additional positions, all of which provided stipends, as follows: November 3, 2011 as a Sports Supervisor (*Id.* at ¶¶ 52-53); May 24, 2012 for additional summer hours (*Id.* at ¶¶ 54-55); July 26, 2012 in the Summer School Bridge Program (*Id.* at ¶¶ 56-57); on August 23, 2012 as an eligible Sports Supervisor (*Id.* at ¶¶ 58-59); on April 25, 2013 for summer hours (*Id.* at ¶¶ 60-61); on July 1, 2014 in the Summer School Bridge Program (*Id.* at ¶¶ 62-63); on July 1, 2014 for additional summer hours (*Id.* at ¶¶ 64-65.); on September 4, 2014 in the Alternative Learning Academy (*Id.* at ¶¶ 66-67); on September 4, 2014 as Sports Supervisor (*Id.* at ¶¶ 68-69); on September 14, 2014 as a Varsity Cheerleading Coach (*Id.* at ¶¶ 70-71.); and, on September 8, 2016 for extended hours (*Id.* at ¶¶78-79). Additionally, in May of 2016, Plaintiff inquired with Dr. Smith as to whether she had been approved for summer hours and Dr. Smith responded two minutes later by forwarding the request, which was then ultimately approved with a stipend. (*Id.* at ¶¶ 73-77.)

ii.    **The Hiring of Spencer – Plaintiff's Alleged Harasser from the Prior Lawsuit**

After Plaintiff filed a Notice of Claim indicating her possible intent to sue the District, Plaintiff requested to meet with the Superintendent, Marnie Hazelton.  (DE 60 at ¶¶ 92-93.)  Plaintiff learned from a third-party that Hazelton refused to meet with Plaintiff because of prior lawsuits that Plaintiff filed against the District.  (*Id.* at ¶¶ 92, 94.)  Although Plaintiff alleged that Hazelton recommended hiring Mr. Spencer as an act of retaliation, she concedes that her only basis for this belief is the third-party comment about Hazelton mentioning Plaintiff's prior lawsuits.  (*Id.* at ¶¶ 95-96.)  In fact, Plaintiff admits understanding that Mr. Spencer applied for the position on his own and that nobody from the District reached out to him about applying.  (*Id.* at 97.)

Spencer was ultimately hired on August 26, 2016 after a vote by four Board members.  (*Id.* at ¶¶ 97, 99-101.)  Out of the four voting Board members, Plaintiff only believes that one of them, Alfred Taylor, specifically voted to hire Spencer as an act of retaliation.  (*Id.* at ¶ 103.)  However, that alleged retaliation was not related to Plaintiff's prior lawsuit.  (*Id.* at ¶¶ 104-107.)  Instead, Plaintiff believes that Taylor does not like her because of their history growing up together in Roosevelt and the "dirt" she has on him.  (*Id.*)  If Mr. Spencer had not been hired back, Plaintiff "would be back at work right now not dealing with the things [she is] dealing with."  (*Id.* at ¶ 98.)

iii.    **Field Trips**

The single alleged retaliatory action taken against Plaintiff during the 2011-2012 school year involved excluding plaintiff from going on class trips that other counselors were permitted to go on.  (DE 60 at ¶¶ 12-13.)  Plaintiff's only basis that this was an act of retaliation is based on a rumor from someone she could not identify.  (*Id.*)  Later in 2015, Plaintiff and her cheerleading squad that she coached, were included in a field trip.  (*Id.* at ¶ 72.)  In May of 2016, Plaintiff emailed the Director of Guidance, Dr. Gerilyn Smith, following up on a prior conversation wherein they discussed Plaintiff taking students to visit a college.  (*Id.* at ¶¶ 39-41.)  Plaintiff was granted permission to take the trip, but advised that the date she picked conflicted with when the students were scheduled to take Regents exams, so Plaintiff agreed that she did not want to take the students away on that date.  (*Id.* at ¶ 43.)

### iv.  <u>**Other Alleged Instances of Retaliation**</u>

The one purported retaliatory action taken during the 2010-2011 school year stems from a comment that Plaintiff *thinks* Principal Dr. Straughan made when Plaintiff asked why she was not being assigned different grade levels: "I think the principal came out and said to me that well, I was told, you know, we got to watch you because you like to sue." (DE 60 at ¶¶ 8-10; DE 55 at Ex. E, p. 35.)  Other than that, during 2010-2011, there were unspecified instances where administrators would ask about the prior lawsuit, but they would politely move on when Plaintiff advised them that she could not discuss the lawsuit. (DE 60 at ¶ 11.)

During the 2014-2015 year, an incident occurred when a parent had a scheduled meeting with Plaintiff, but Plaintiff could not be located. (*Id.* at ¶ 26.) The Principal at that time, Mr. Farnum, screamed at Plaintiff, but later apologized because the incident was a misunderstanding. (*Id.* at ¶¶ 26, 28.) After another similar instance, Farnum told Plaintiff that she had to let people know where she was. (*Id.* at ¶ 29.)

Plaintiff claims that in 2016, Ms. Patton, the Assistant/Interim Principal, retaliated against her by investigating an allegation that Plaintiff had changed students' grades, even though the students were not her assigned students. (*Id.* at ¶ 83; DE 55 at Ex. E, p. 58.) Plaintiff, and not the students' actual counselor, was threatened with termination and although Plaintiff admits that Patton had a duty to investigate the allegation, Plaintiff claims the actual counselor was told not to come forward so that the Administrators could use the incident to investigate and discipline Plaintiff. (*Id.* at ¶¶ 83-85.) Ultimately, Plaintiff was not suspended or disciplined after the allegation. (*Id.* at ¶ 87.) Patton did not retaliate in any other way. (*Id.* at ¶ 88.)

In 2016, Dr. Smith and Dr. Lange, Assistant Superintendent for Secondary Education, asked if Plaintiff would be interested in taking a position in the elementary school as a lead counselor, which might involve a stipend. (*Id.* at 30-31.) According to Plaintiff, the position would have been a demotion, but nothing ever came about the transfer because there was no position actually open. (*Id.*; DE 55 at Ex. E, p. 90.)

Plaintiff could not confirm whether Dr. Smith knew about Plaintiff's prior lawsuit (*compare* DE 55 at Ex. C, p. 69 with Ex. E, p. 95.)  Moreover, despite testifying that Dr. Smith would dismiss suggestions during meetings and was nasty and rude, Plaintiff could not identify any specific examples of Dr. Smith "categorically rejecting" her ideas.  (DE 60 at ¶¶ 44-45.)

Plaintiff relies heavily on a comment that Jones, the former Principal, made regarding administrators sticking together in order to "get" Plaintiff.  *(Id.* at ¶ 82.).  Yet, Jones never made comments or took any action that Plaintiff believed was retaliatory.  (*Id.*)  Indeed, Plaintiff believes that Jones was "a hundred percent in [her] corner."  (DE 55 at Ex. E, p.163.)

Although Plaintiff claims Farnum harassed her for five years, not a single specific incident or comment has been identified aside from one incident during the 2015-2016 school year when Farnum reprimanded Plaintiff in front of others in the hallway over scheduling work he claimed Plaintiff did not complete.[3]  (DE 60 at ¶ 81.)

Plaintiff also generally asserts that Assistant Principal Cassandra Jackson-Middleton was frustrated with Plaintiff over scheduling issues and threw Plaintiff's prior case in her face, belittled her in front of colleagues, and offered her a position that was not board approved, but does not specify what year this incident occurred.  (*Id.* at ¶ 89.)  The reason that Jackson-Middleton asked Plaintiff to take a night school position was because Jackson-Middleton observed Plaintiff previously do an "awesome job" in night school.  (*Id.* at ¶ 90.)

### III.    LEGAL STANDARD

#### A.  Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could

---

[3] As Defendant correctly points out, Plaintiff's 56.1 Counterstatement inaccurately claims that Farnum harassed her "for five years," (DE 60 at ¶ 81) but the actual testimony in response to whether Plaintiff recalled any other specific incidents where she was verbally reprimanded by Farnum was: "I can't recall. It has been five years.  But that's been ongoing with Mr. Farnum…"  (DE 55, Ex. E at p. 162.)

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted).

The moving party bears the initial burden of establishing that there are no material facts in dispute and must provide "affirmative evidence" from which a factfinder could return a verdict in its favor. *Id.* at 257. If the movant provides such affirmative evidence, then "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (citations omitted). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (citing *Scotto v. Almenas*, 143 F.3d 104, 114 (2d Cir. 1998)). If the non-moving party fails to establish an essential element of its claim, there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. The Antiretaliation Provision of Title VII of the Civil Rights Act of 1964

Title VII of the Civil Rights Act of 1964 "prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington Northern and Sante Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (quoting 42 U.S.C. § 2000e—3(a)). Under this section of Title VII, referred to as the antiretaliation provision, "discriminate against" has been interpreted to mean that an "employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57.

Unlawful retaliation claims under Title VII are analyzed using the *McDonnell Douglas* framework. *Eustache v. Home Depot U.S.A., Inc*., No. 13-CV-42L (SJF)(AKT), 2014 WL 4374588, at *31 (E.D.N.Y. Sep. 2, 2014) *adopting report and recommendation*, *aff'd*, 621 Fed. App'x. 86 (2d Cir. 2015) (citation omitted). Under this framework, a plaintiff must first establish a *prima facie* case, and the burden then shifts to the defendant to set forth a "legitimate, non-discriminatory reason for the adverse employment action." *Brown v. Northrop Grumman Corp.*, No. 12-CV-1488 (JS)(GRB), 2014 WL 4175795, at *5 (E.D.N.Y. Aug. 19, 2014) (citation omitted). If a defendant provides such a reason, the burden shifts back to the plaintiff who must "present competent evidence that the reasons offered by the defendants were not the true reasons, but were a pretext for discrimination or retaliation." *Id.* (citation omitted). To make out a *prima facie* retaliation claim under Title VII, a plaintiff must demonstrate that "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012). "To prove the required causal link, [plaintiff] must establish that the employer's retaliatory motive was a but-for cause of the adverse action." *Husser v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 253, 271–72 (E.D.N.Y. 2015) (*adopting report and recommendation*) (internal quotation marks and citations omitted). When determining whether summary judgment is appropriate, the court must only determine "whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Id.* at 272 (citation omitted).

**C. Adverse Employment Actions**

To establish a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse" meaning the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68 (internal quotation marks and citation omitted). Typically "[p]etty slights, minor annoyances, and simple lack of good manners" do not constitute such adverse action. *McWhite v. N.Y.C. Hous. Auth.*, No. 05 CV 0991(NG)(LB), 2008 WL 1699446, at *13 (E.D.N.Y. Apr. 10, 2008) (alternation in original)

9

(citation omitted).  However, when analyzing whether an action is materially adverse, the alleged acts should be considered both separately and in the aggregate "as even minor acts of retaliation can be sufficiently substantial in gross as to be actionable." *Husser*, 137 F. Supp. 3d at 272 (internal quotation marks and citations omitted).

### D.  Hostile Work Environment

"To establish a [retaliatory] hostile work environment under Title VII, a plaintiff must show that her workplace was permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Liang v. Cafe Spice SB, Inc.*, 911 F. Supp. 2d 184, 208 (E.D.N.Y. 2012) (internal quotation marks and citations omitted).  A retaliatory hostile work environment is sufficiently severe if the incidents that took place after the complaint were "sufficiently continuous and concerted to have altered the conditions of an employee's employment." *McWhite*, 2008 WL 1699446 at *13 (citations omitted).  A reasonable person must find the work environment to be hostile and the plaintiff must also subjectively perceive so. *Id.* (citation omitted).  Considerations for determining whether a reasonable person would find the work environment to be hostile include frequency and severity of the conduct, whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's performance at work. *Mormol v. Costco. Wholesale Corp.*, 364 F.3d 54, 58 (2d Cir. 2004) (citations omitted).  Courts view the circumstances in their totality. *McWhite*, 2008 WL 1699446 at *14.  "General rude behavior is insufficient to demonstrate a hostile work environment." *Id.*

### E.  Causal Connection

A plaintiff establishes a causal connection between the protected activity and the adverse employment action either by "(1) indirectly [showing] that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Liang*, 911 F. Supp. 2d at 211.  A "plaintiff

alleging retaliation in violation of Title VII must show that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." *Toombs v. N.Y.C. Hous. Auth.,* 830 F. App'x 665, 668 (2d Cir. 2020) (citing *Kwan v. Andalex Grp. LLC,* 737 F.3d 834, 845 (2d Cir. 2013)).

"The Second Circuit has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Husser*, 137 F. Supp.3d at 274. (internal quotation marks and citation omitted). However, two-to-three-month gaps have generally, but not always, been found as too long of a gap to support a causality inference. *Id.* (citations omitted); *see also Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation . . . six months between protected activity and discharge is well beyond the time frame for inferring retaliatory causation" (internal citation and citation omitted)); *Chamberlin v. Principi*, 247 Fed. App'x 251, 254 (2d Cir. 2007) (five month gap between protected activity and alleged adverse job action insufficient to show a causal connection); *Green v. N.Y.C. Transit Auth.*, 15-CV-8204 (ALC), 2020 WL 5632743, at *12 (S.D.N.Y. Sep. 21, 2020) (no causal connection for alleged action that occurred years after the protected action took place).

## F. New York State Human Rights Law Claims Pursuant to N.Y. Exec. L. §§ 296, 297

Courts analyze claims under Title VII and New York State Human Rights Law ("NYSHRL") under the same standard that is applied in Title VII discrimination claims. *Pucino v. Verizon Wireless Communications, Inc.*, 618 F.3d 117, n.2 (2d Cir. 2010) (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565, n.1 (2d Cir. 2000)); *see also King v. N.Y. State Div. of Veterans' Affs.*, No. 06-CV-6391 (TCP), 2010 WL 11613547, at *12 (E.D.N.Y. Mar. 29, 2010) ("Claims brought pursuant to NYSHRL ... § 296 'are analytically identical to claims brought pursuant to Title VII.") (*quoting McDowell v. T -Mobile USA, Inc.*, 307 Fed. App'x. 531, 532 (2d Cir. 2009) (collecting cases); *Townsend v. Benjamin Enters.*, 679 F.3d 41, n.2 (2d Cir. 2012) (citing *Townsend v. Benjamin Enters., Inc.*, No. 05 Civ. 9378(GAY), 2008 WL

1766944, at *2, n.3 (S.D.N.Y. Apr. 17, 2008)).[4]

## IV.    DISCUSSION

The parties do not dispute that Plaintiff's prior lawsuit was a "protected activity" and that the District was aware of that activity.  Rather, the central issues before the Court are whether plaintiff (i) has satisfied the third and fourth prongs of her *prima facie* case by producing evidence to show she was subjected to either adverse employment actions or a hostile work environment, and (ii) established a sufficient causal link between the 2005 lawsuit and the alleged subsequent events.

### A.  Materially Adverse Action

In ruling on Defendant's motion to dismiss, Judge Locke specifically found that the Complaint contained multiple plausible allegations of materially adverse actions that, taken together, might dissuade a reasonable worker from suing her employer for sexual harassment.  (DE 29 at 18.)  These actions were: Smith's purported refusal in May 2016 to submit Plaintiff's name to work extended summer hours (Judge Locke also noted this event may constitute material adversity on its own); multiple School District Superintendents accusing Plaintiff of lying about the claims asserted in the prior lawsuit; contentions that Plaintiff was publicly reprimanded, disparaged, and ridiculed in front of parents and co-workers, and subject to verbal abuse after the prior lawsuit settled; an excessive caseload; consistently being undermined in performing her job responsibilities; being denied summer work; and, being called a liar. (*Id.* at 18-20.)  Judge Locke further found that the hiring of Spencer when considered with the "remaining allegations" and "especially given the claim that he was hired despite others' outrage because Hazelton believes 'everyone deserves a second chance,' may constitute materially adverse action."  (*Id.* at 21.)

Now that discovery is complete, Defendant argues that the evidence directly refutes the retaliatory nature of these acts, and that such acts only amount to annoyances which are not sufficient to

---

[4] Several amendments to the NYSHRL were signed into law on August 12, 2019, including eliminating Title VII's analogous "severe and pervasive" standard for establishing a hostile work environment.  *See Wellner v. Montefiore Med. Ctr.*, No. 17 Civ. 3479 (KPF), 2019 WL 4081898, at n.4 (S.D.N.Y. Aug. 29, 2019); *see also Chauhan v. MM Hotel Mgmt. LLC*, No. 18-CV-5963 (DRH)(SIL), 2019 WL 6118006, at n.7 (E.D.N.Y. Nov. 18, 2019).  However, these changes do not apply retroactively and therefore, do not apply here.  *See id.*

support a retaliation claim. (DE 53 at 9-12.) Defendants argue that Plaintiff consequently cannot establish a *prima face* retaliation case because she has failed to establish a materially adverse employment action. (*Id.*) Plaintiff opposes that "many" of these acts, i.e., denying Plaintiff the ability to go on trips, denying her per session work, constantly changing her schedule/assigned students, berating her, threatening her, false accusations of performance issues, and hiring Spencer, individually amount to actions that could dissuade someone form engaging in protected activities. (DE 59 at 11.) However, the record before the Court reveals an utter lack of evidentiary support for Plaintiff's allegations and, in many instances, Plaintiff's own testimony sounds the death knell to her claims.

Plaintiff's claim that Dr. Smith refused to submit her name in May 2016 to work extended summer hours was baseless. In fact, Plaintiff admits that she was never denied summer hours. (*Id.* at ¶¶ 46, 49-50.) When Plaintiff asked Dr. Smith in 2016 about whether she had been approved for summer hours, Dr. Smith responded within two minutes, forwarded her request, and within a few hours the request was approved with a stipend. (DE 60 at ¶¶ 73-77.) Plaintiff's testimony details all of the additional positions and summer hours she was approved to work, prior to 2016, without any specific instance wherein she was denied requested hours. (*Id.* at ¶¶ 52-71, 78-79.) Plaintiff's claim of an excessive caseload was also refuted by her own testimony: from 2011-2014, Plaintiff was honored to be working with 11th and 12th graders and had no issue with teaching multiple grades (*Id.* at ¶¶ 21-22), other counselors were also assigned multiple grades (*Id.* at ¶ 23), and in 2015-2016 when Plaintiff was assigned students outside of her assigned grade level, the administration explained that it was due to complaints regarding another counselor and because several parents requested Plaintiff due to her longstanding relationship with their children (*Id.* at ¶¶ 32-37). Plaintiff's testimony clarifies her contentions about being publicly reprimanded, disparaged, and ridiculed in front of parents and co-workers. She explained that in the 2014-2015 school year, then Principal Farnum screamed at Plaintiff for missing a scheduled meeting with a parent, but later apologized because of a misunderstanding. (*Id.* at ¶¶ 26, 28.) Plaintiff's claim that Spencer was hired back as an act of retaliation is also rebutted by her own testimony. Plaintiff admitted that Spencer applied for the position on his own (*Id.* at ¶ 97) and out of the four Board members

13

that partook in the vote, Plaintiff thinks one of them retaliated against her because of "dirt" she had on

him from childhood (*Id.* at ¶¶ 99-101, 103-105.)  The only other basis for the allegation that Defendant

hired Spencer as an act of retaliation was the purported comment by the Superintendent, which Plaintiff

heard about through a third-party.  (*Id.* at ¶¶ 92, 96.)  Nevertheless, such an allegation is inadmissible

hearsay and should not be considered.  *See Pacenza v. IBM Corp.*, 363 F. App'x. 128, 130 (2d Cir. 2010)

(Summary Order) (holding that "a court is obliged not to consider inadmissible evidence at the summary

judgment stage"); *Howley v. Town of Stratford*, 217 F.3d 141, 155 (2d Cir. 2000) (finding that plaintiff's

testimony regarding co-workers telling her of certain statements her boss made constitute hearsay (citing

Fed. R. Evid. 801)).

Moreover, although Plaintiff stated that Jones made a comment regarding administrators sticking

together in order to "get" Plaintiff, (DE 60 at ¶ 82), the record is devoid of any support for Plaintiff's

allegations that the administration accused Plaintiff of lying about the claims asserted in the prior lawsuit,

subjected her to verbal abuse after the prior lawsuit settled, consistently undermined her from performing

her job responsibilities, and called her a liar.  Plaintiff admitted that she did not consider the comment

itself to be retaliatory either.  (DE 60 at ¶ 82.)

Thus, Plaintiff has conceded that almost all of the alleged acts were either untrue or not founded

by a retaliatory motive.  That leaves only the following: an occurrence during the 2015-2016 school year

when Farnum reprimanded Plaintiff in front of others in the hallway over scheduling work he claimed

Plaintiff did not complete (*Id.* at ¶ 81); an occurrence when Assistant Principal Cassandra Jackson-

Middleton was frustrated with Plaintiff over scheduling issues and "threw" Plaintiff's prior case in her

face (*Id.* at 89-91); and, undated and unspecified occurrences of Jackson-Middleton belittling Plaintiff

during department meetings, and offering her a position that was not board approved, which nothing ever

came of. (*Id.* at ¶ 89.)  Yet, significantly, Plaintiff essentially admits that none of these acts were

materially adverse to the point where a reasonable employee would be dissuaded from engaging in

protected activity: Plaintiff testified that if Spencer had not been hired back, she "would be back at work

right now not dealing with the things [she is] dealing with."  (*Id.* at ¶ 98.)

14

Here, the alleged acts Plaintiff claims she endured are not the type of instances that establish an adverse employment action. S*ee Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006) ("Employment actions that have been deemed sufficiently disadvantageous to constitute an adverse employment action include 'a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'") (citation omitted)); *Guity v. Uniondale Union Free Sch. Dist.*, No. 12-CV-1482 (SJF)(KT), 2014 WL 1330636, at *17 (E.D.N.Y. Mar. 31, 2014) (*adopting report and recommendation*) (adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities") (internal quotation marks and citations omitted). The record before the Court demonstrates Plaintiff at most dealt with run of the mill experiences that most employees encounter here and there. *See Pressley v. City of N.Y.*, No. 11-CV-3234 (PKC) (RER), 2015 WL 13730699, at *13 (E.D.N.Y. Aug. 27, 2015) (holding that "petty slights or minor annoyances that often take place at work and that all employees experience" do not "rise to the level of a materially adverse employment action") (citing *Burlington*, 548 U.S. at 68); *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 186 (S.D.N.Y. 1999) (finding that actions plaintiff complained of, "such as scrutiny from his supervisors that he deemed excessive, requiring documentation for sick leave . . . [and] the unexplained absence of certain documents that he thinks should be in his employment file" did not constitute adverse employment actions).

Plaintiff also argues that even if these acts do not individually amount to an adverse action, the totality of Defendant's acts would dissuade an employee from complaining about discrimination. (DE 59 at 12.) "Under this theory, 'a combination of seemingly minor incidents' may satisfy the adverse action prong, 'once they reach a critical mass.'" *Rooney v. Brown Grp. Retail, Inc.*, No. 08 CV 484(DRH)(AKT), 2011 WL 1303361, at *16 (E.D.N.Y. Mar. 31, 2011) (quoting *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002); *see also Husser*, 137 F. Supp. 3d at 272 (finding that in the aggregate, some of the enumerated alleged actions – a demotion, exclusion from being part of an arbitration, and

temporary revocation of car privileges – may be sufficiently adverse to support a retaliation claim); *cf.*

*Reckard v. Cnty. of Westchester*, 351 F. Supp. 2d. 157, 162 (S.D.N.Y. 2004) (finding that a plaintiff who

alleged at most a two-month period of dissatisfaction with her work assignments and a series of other

minor and occasional inconveniences could not reasonably be construed as an unreasonably inferior work

environment).  Here, even viewing the alleged acts collectively – being reprimanded in the hallway over a

scheduling issue, a vague assertion that the prior lawsuit was "thrown" in Plaintiff's face, undated and

unspecified occurrences of belittling at department meetings – Plaintiff fails to meet her burden to

demonstrate she suffered an adverse employment action.

   Thus, whether taken individually or in the aggregate, these acts do not constitute adverse

employment actions sufficient to satisfy the third prong of Plaintiff's *prima facie* retaliation claim.

### B.  Hostile Work Environment

   Defendant argues that Plaintiff's hostile work environment claim fails because it is based upon a

series of unspecified references to passing remarks about her prior lawsuit and that none of the comments

created a workplace permeated with intimidation, ridicule, and insult.  (DE 53 at 12-13) (*citing Johnson v.

City of N.Y.*, 16-CV-6426(KAM)(VM2021 WL 1193502, at *13 (E.D.N.Y Mar. 30, 2021).  Plaintiff's

only opposition to this argument is a vague assertion that she was "subjected to a steady barrage of

comments by administrators, as well as hostility, berating, threats, and intimidation from various

supervisors."  (DE 59 at 13.)

   As discussed above, Plaintiff stated that she would not be here if Spencer had not been re-hired,

essentially admitting that the alleged retaliation was not subjectively severe or pervasive enough to alter

the conditions of her employment.  (DE 60 at ¶ 98.)  Nor is the Court persuaded that a reasonable person,

weighing the totality of the circumstances, would find the work environment to be hostile.  *Mormol*, 364

F.3d at 58 (holding that whether a reasonable person would consider the work environment to be hostile

requires weighing the frequency of the conduct, severity of the conduct, whether the conduct is physically

threatening or humiliating, or a mere offensive utterance, and whether the conduct unreasonably interferes

with the employee's work performance) (citations omitted).  "The test is whether the harassment is of

such a quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse.*" *McWhite*, 2008 WL 1699446 at *14 (alterations in original) (internal quotation marks and citation omitted).   Here, the unspecified instances of belittling or throwing the prior case in Plaintiff's face, and an instance when Farnum reprimanded Plaintiff, are not sufficient to satisfy this objective standard.  *See id.* at *14-15 (holding that seven incidents spanning over three years was not sufficiently continuous or concerted to establish a pervasive hostile work environment); *Deters v. Lafuente*, 368 F.3d 185, 187-89 (2d Cir. 2004) (finding that a plaintiff police officer's alleged string of isolated actions over a multi-year period – being reprimanded for not doing his job, accused of failing to respond to phone calls, being issued a summons, being told he would never get selected for a specialized position, and being ordered to remain at a street corner for hours – did not resemble a "pattern of nearly constant harassment" (citation omitted)).  Notably, Plaintiff does not set forth any support, let alone mention, that the alleged incidents were threatening or humiliating, or interfered with her ability to do her job.  Thus, Plaintiff has not established an adverse employment action through a hostile work environment.

**C.  Causal Connection**

Even if Plaintiff had established she suffered an adverse employment discrimination or hostile work environment, Plaintiff has failed to produce evidence of a causal link between the alleged harassment and her prior lawsuit, and has therefore failed to meet her burden in establishing a *prima face* retaliation case.

In ruling on Defendant's motion to dismiss, Judge Locke found that Plaintiff adequately pled direct evidence of retaliatory animus through Principal Jones's comment after her prior lawsuit had settled, that administrators were "after" her, as well as numerous references to negative reactions concerning the prior lawsuit.  (DE 29 at 24.)  If true, Judge Locke held, then that the temporal gap between the prior lawsuit that settled in 2009 and the alleged retaliation that occurred during the 2015-2016 school year would be irrelevant since direct evidence of retaliatory animus eliminates the need for temporal proximity. (*Id.* at 23 citing *Duplan v. City of N.Y.,* 888 F.3d 612, 625 (2d Cir. 2018) ("Causation

may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity.")).

Now on summary judgment, Defendant argues that Plaintiff has acknowledged that the decision to hire Spencer was not driven by a retaliatory motive, and the time between Plaintiff's prior lawsuit and Spencer's hiring is too long to establish a causal link. (DE 53 at 18-20.) Plaintiff makes blanket statements in opposition, arguing that she has testified to "numerous instances" where she was treated differently than similarly situated co-workers, yet only specifically relies on the grade changing incident (DE 59 at 13-16) which Plaintiff herself admitted the administration needed to investigate, and which she was not disciplined for (DE 60 at ¶¶ 83-85, 87-88).

Significantly, as to the re-hiring of Spencer in the 2015-2016 school year, Plaintiff's own testimony rebuts any support of direct animus. Plaintiff admitted that she only thinks one of the voting Board members may have voted for Spencer because Plaintiff has "dirt" on that Board member from childhood. (DE 60 at ¶¶ 104-107.) Plaintiff has not demonstrated any implausibility as to the District's contention that Spencer was hired for nonretaliatory reasons and therefore fails to establish the necessary "but-for" causation. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013) (holding that "but-for" causation only requires the plaintiff to show that "the adverse action would not have occurred in the absence of the retaliatory motive," which may be proven by "demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action.") (citations omitted).

Even drawing all favorable inferences in Plaintiff's favor, the record does not support Plaintiff's allegations of direct retaliatory animus. As discussed at length above, almost all of Plaintiff's allegations have been rebutted by her own testimony and are therefore not but-for causes of the alleged adverse actions. *See Green*, 2020 WL 5632743, at *12 (finding that four actions which Defendants provided legitimate, non-discriminatory bases for, were not but-for causes of the alleged adverse employment actions). Moreover, the exact comments that this Court explicitly relied on in denying Defendant's motion to dismiss, have not been developed in any meaningful way to support Plaintiff's retaliation claim.

Specifically, Plaintiff's Complaint at paragraph 23 states:

> After the lawsuit was settled, defendant targeted plaintiff as a troublemaker and consistently referred to her "litigious" nature. Michael Jones, while he was a Principal in the District, told complainant "Minnie, they're after you" and "Administrators have to stick together, but I can't get on that bandwagon." Dr. Straughan, the Principal of the high school at the time, told complainant "I've been told to look out of you. You do nothing but sue."

(DE 1, ¶ 23.)

> Tellingly, the evidence is even less detailed than Plaintiff's Complaint:

> Q.   An individual told you that an administrator had come to him and said we have to stick together?
> A.   Right.
> Q.   And I believe you're referring to Michael Jones, correct?
> A.   Exactly.
> Q.   And he was an assistant principal?
> A.   He was principal and then he became athletic director.
> Q.   Do you recall what school year he was principal?
> A.   I don't remember. I worked with him one year. I don't remember what year.
> Q.   When he relayed this conversation to you, did he tell you which administrators told him that they were out to get you?
> A.   Whoever was head of personnel at that time. It could have been Dr. Goldberg at that time. I don't remember.

(DE 55, Ex. 5 at p. 51.) Moreover, Plaintiff's testimony about Straughan's comment was even more

wishy washy, as she could only say she "think[s]" he made such a comment:

> Q.   During the 2010, 2011 school year, do you recall any incidents that took place that you believe were in retaliation for the lawsuit that had settled in June 2009?
> A.   There was always ongoing things and, you know, even when I went to question why I was 9th grade and couldn't go up, I think the principal came out and said to me that well, I was told, you know, we got to watch you because you like to sue.  I like to sue; I only had one lawsuit against the district.
> Q.   Other than that comment by the principal who was, I believe, Mr. Straughan at that time?
> A.   Mr. Straughan, yes.
> Q.   Did Mr. Straughan ever take any actions against you that school year that you considered to be retaliatory?
> A.   I can't recall.  So much has happened and putting things together and trying to pinpoint dates and times.  You know, when these things -- it's really hard.
> Q.   Okay.  Other than that comment that he made to you that you just described, do you recall any other conversations you had with Mr. Straughan where he discussed your prior lawsuit?
> A.   No.

(*Id.* at pp. 35-36.)

The evidence here falls far short of demonstrating direct animus toward Plaintiff.  Moreover, mere speculation or conjecture "as to the true nature of the facts" cannot defeat a motion for summary judgment.  *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019); *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (finding that while considering summary judgment the court must view the evidence in the light most favorable to plaintiff, a "court cannot credit a plaintiff's merely speculative or conclusory assertions" and deposition testimony used to establish facts must be made on personal knowledge) (internal quotation marks and citations omitted).  Accordingly, the Court finds that Plaintiff has not established direct evidence of retaliatory animus.

Nor has Plaintiff established a causal connection through temporal proximity between the protected activity and the alleged adverse action.  Although "temporal proximity can support an inference

of retaliation for purposes of establishing a *prima facie* case, the proximity must be very close." *Dhar v. City of N.Y.*, 655 Fed. App'x. 864, 865-66 (2d Cir. 2016) (Summary Order) (internal quotation marks and citation omitted).  Here, the gap in time between Plaintiff's 2005 lawsuit, which settled in 2009, and the 2015-2016 hiring of Spencer is too attenuated to establish a causal connection.  "Claims of retaliation are routinely dismissed when as few as three months elapse between the protected EEO activity and the alleged act of retaliation." *Nicastro*, 60 F. Supp. 2d at 185 (collecting cases) (holding that "two-and-one-half years is far too long to warrant an inference of discriminatory retaliation."); *see also Green*, at *12 (finding that alleged adverse actions that took place years after prior lawsuit was filed did not establish causal connection); *Chang v. Safe Horizons*, 254 Fed. App'x. 838, 839 (2d Cir. 2007) (Summary Order) (finding that termination occurring almost one year after complaint of discrimination undermined any causal nexus based on temporal proximity); *Yarde*, 360 F. Supp. 2d at 562 ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation . . . six months between protected activity and discharge is well beyond the time frame for inferring retaliatory causation" (internal citation and citation omitted).  For the same reason, Farnum's alleged act of reprimanding Plaintiff in the hallway in 2015-2016 is too attenuated to establish temporal proximity.  Accordingly, even if Plaintiff had established she suffered an adverse employment action at the hands of Defendant, she has failed to establish a causal connection by either demonstrating direct animus or temporal proximity, and therefore fails to satisfy her *prima facie* retaliation case.

**D.  NYSHRL Claims Pursuant to N.Y. Exec L. §§ 296, 297**

Although Defendant moves to dismiss Plaintiff's Complaint in its entirety (DE 52), Defendant does not address Plaintiff's NYSHRL claims.  Nevertheless, because "[c]laims brought pursuant to NYSHRL, New York Executive Law § 296 [and § 297] 'are analytically identical to claims brought pursuant to Title VII[,]'" the undersigned *sua sponte* respectfully recommends that Plaintiff's N.Y. Exec. L. §§ 296 and 297 claims be dismissed.  *See King v. N.Y. State Div. of Veterans' Affairs*, No. 06-cv-6391, 2010 WL 11613547, at *12 (E.D.N.Y. Mar. 29, 2010) (quoting *McDowell v. T-Mobile USA, Inc.*, 307 Fed. App'x. 531, 532 (2d Cir. 2009) (collecting cases).

21

## V.    CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Defendant's motion for summary judgment be GRANTED, dismissing Plaintiff's Complaint in its entirety, with prejudice.

## VI.    OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel for Defendant.  Defendant is directed to serve a copy of this Report and Recommendation on Plaintiff via first-class mail and via email and promptly file proof of service on ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:  Central Islip, New York
        May 16, 2022

**Respectfully recommended:**

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge